**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD BUTERBAUGH,** | : | **CIVIL ACTION NO. 3:20-CV-518** |
| | : | |
| **Petitioner** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN KAUFFMAN,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM

This is a habeas corpus filed pursuant to 28 U.S.C. §2254. Petitioner, Gerald Buterbaugh, challenges the legality of a 2011 conviction and sentence for third-degree murder in the Franklin County Court of Common Pleas. The petition will be denied and a certificate of appealability will not issue.

## I.    Background

The state courts of Pennsylvania have succinctly summarized much of the relevant procedural history and factual background. On May 30, 2010, Buterbaugh and some of his friends, including Shane Waters and Nathan Souders, were riding four-wheel all-terrain vehicles on Waters's family farm in Fulton County, Pennsylvania. Commonwealth v. Buterbaugh, 91 A.3d 1247, 1250 (Pa. Super. Ct. 2014). Although Buterbaugh had quit drinking alcohol about ten years prior, he was drinking beer on May 30, 2010. Id. at 1251. Later that night, Buterbaugh, Waters, and Souders went to a bar in Franklin County in Buterbaugh's pickup truck. Id. They arrived at the bar around 1:00 a.m. on May 31, 2010. Id.

Buterbaugh and his friends ordered a round of drinks and Souders began talking to a woman named Jocelyn Gamble. Id. It is unclear how many people were in the bar at the time, though accounts given by Souders and a bystander indicated that there were between six and ten people there. Id. One of the other people present in the bar was Dale Steven Henry. Id. Henry was drinking, and his blood alcohol content, when tested at 4:05 a.m., was .18%. Id. Waters testified that Henry was belligerent, and a bystander in the bar testified that Henry was also talking to Gamble. Id. Buterbaugh drank two more beers while Souders was talking with Gamble. Id. Souders then began talking with another woman in the bar, "Courtney," which apparently agitated some of the other patrons. Id.

At some point, a confrontation began between Souders and some of the other patrons in the bar. Id. The other patrons "jumped" Souders, and one of them hit him in the back of the head with a beer bottle. Id. The bartender ordered everyone in the bar to leave, and everyone complied with this direction. Id. Buterbaugh and Waters were the last two people to exit the bar. Id. Buterbaugh was not involved in the confrontation inside the bar. Id. He did not hit anyone, nor did anyone hit him. Id. Buterbaugh continued to not be involved as the confrontation continued outside the bar and he went to his truck. Id. There was no evidence of Henry or anyone else hitting or threatening Buterbaugh or Waters in any way. Id.

As Buterbaugh and Waters walked to Buterbaugh's truck, the confrontation between Souders and the other patrons continued outside the bar when an unknown person struck him. Id. Waters testified that Henry was one of the people

assaulting Souders, but Souders could not identify him as such. Id. Buterbaugh did not known whether Henry assaulted Souders. Id.

Buterbaugh got into his truck and started the engine. Id. Waters then pulled Souders away from the confrontation and the two of them got into Buterbaugh's truck. Id. Souders had a black eye, a small cut, and a bruise on the back of his head from the altercation. Id. Buterbaugh and Waters testified that Souders's assailants began to throw objects at the truck, including beer bottles, rocks, and pool cues. Id. When police searched the area after the incident, however, the only object they found was one broken beer bottle. Id. at 1251-52.

After starting the truck, Buterbaugh backed it onto the road. Id. at 1252. After the truck stalled, Buterbaugh restarted it and then pointed it towards the road over the mountain that went back towards Fulton County. Id. Buterbaugh revved his engine and spun his tires to try to scare the other bar patrons. Id. He then hit the gas and accelerated as fast as he could towards Henry, who was standing near the white fog line on the road. Id. Henry did not have anything in his hands and was not making any threatening gestures towards the truck. Id. Henry did not make any sudden movements or jump in front of the truck, but Buterbaugh testified that it appeared that Henry was trying to throw something at the truck. Id. Just before the truck hit Henry, Waters exclaimed, "whoa, there's a guy!" Id. The truck struck Henry head-on on the passenger side of the front of the truck. Id. Subsequent testing by an expert employed by the Commonwealth indicated that the truck was traveling 17 miles per hour when it struck Henry, which the expert determined was its maximum potential speed at that moment. Id. Buterbaugh did not apply the

brakes or swerve to try to avoid contact with Henry. Id. Souders testified that the collision could have been avoided, and Waters stated the same thing in a statement to police. Id. Waters attempted to qualify his statement during testimony at trial, but admitted that the collision could have been avoided if Buterbaugh applied the brakes. Id.

Shortly after the collision, Buterbaugh told police that he was "pissed" at the time of the collision and that he was trying to scare Henry and push him off the road when he struck him with the truck. Id. Buterbaugh acknowledged that he saw Henry prior to the collision. Id. Police asked him what he was thinking at the time, and Buterbaugh responded, "kiss my ass." Id.

After the collision, Buterbaugh sped up the road towards Fulton County. Id. While driving, he told Souders that he "wanted to go back and fly through them and get some more." Id. at 1252-53. He did not return to the bar because some of the other patrons were following him in another vehicle. Id. at 1253. Buterbaugh eventually evaded the patrons who were following him. Id.

Emergency personnel found Henry lying face up and severely injured on the road. Id. He was transported by helicopter to Altoona Trauma Center, where he arrived at 3:56 a.m. Id. Doctors at the trauma center treated Henry, but he was subsequently pronounced dead at 2:10 p.m. Id. Expert testimony at trial indicated that the collision was the cause of Henry's death. Id.

After leaving the scene, Buterbaugh drove to a friend's house to attend to Souders's injuries. Id. Because the collision had damaged the hood and front radiator grill of the truck, Buterbaugh attempted to find a new hood for the truck.

Id. After state police unsuccessfully attempted to find Buterbaugh at his home, they spoke with members of his family. Id. Buterbaugh voluntarily turned himself in at the McConnellsburg Barracks later on May 31, 2010. Id. Buterbaugh was not arrested at that time, but police continued their investigation. Id. Police then arrested him and charged him with vehicular homicide on June 8, 2010. Id. Buterbaugh pleaded not guilty. Id. Following a four-day jury trial in the Franklin County Court of Common Pleas, he was found guilty of third-degree murder and not guilty of first-degree murder. Id. On June 8, 2011, the trial court sentenced him to a term of imprisonment for 15-40 years. Id.

Buterbaugh filed post-sentence motions and a waiver of his right to raise ineffective assistance of counsel claims on state collateral review so that he could raise such claims on direct review. Id. at 1253-54.[1] The trial court denied the post-sentence motions, and Buterbaugh appealed to the Superior Court. Id. at 1254.  On appeal, a panel of the Superior Court vacated the judgment of sentence and remanded the case for resentencing. Id. Before the case was remanded, however, the Superior Court granted the Commonwealth's motion for rehearing *en banc*. Id.

Buterbaugh asserted eight claims before the *en banc* Super Court: (1) that trial counsel was ineffective for failing to introduce evidence of Henry's violent and aggressive character, including his criminal record and specific instances of

---

[1] As the Superior Court notes, Pennsylvania law allows a criminal defendant to waive his right to assert ineffective assistance of counsel claims on collateral review pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") in favor of raising such claims on direct appeal from his conviction and sentence. See id. (citing Commonwealth v. Holmes, 79 A.3d 562, 563-64 (Pa. 2013)).

conduct; (2) that the trial court erred by not instructing the jury on causation and that counsel was ineffective for failing to object to this; (3) that the trial court gave a prejudicial jury charge on malice and that trial counsel was ineffective for failing to object to this; (4) that the trial court gave an incomplete, misleading, and prejudicial jury instruction on voluntary manslaughter and that trial counsel was ineffective for failing to object to this; (5) that trial counsel was ineffective for failing to object to the Commonwealth's improper questioning of Souders and that the court erred by not allowing Buterbaugh to introduce witnesses to impeach Souders's testimony; (6) that trial counsel was ineffective for failing to object to the wholesale admission of Buterbaugh's criminal record; (7) that the trial court erred by applying a deadly weapon enhancement at sentencing; and (8) that the trial court abused its discretion by imposing a manifestly excessive sentence. Id. The Superior Court found Buterbaugh's claims unavailing and affirmed the judgment of sentence on May 13, 2014. Id. at 1254-70. Buterbaugh filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on November 26, 2014. Commonwealth v. Buterbaugh, 104 A.3d 1 (Pa. 2014). Buterbaugh did not seek further review by the United States Supreme Court.

On February 8, 2016, Buterbaugh filed a collateral challenge to his conviction pursuant to the PCRA, asserting that: (1) trial counsel was ineffective in failing to investigate and present exculpatory evidence; (2) appellate counsel was ineffective in failing to raise additional claims of ineffective assistance of counsel; and (3) his waiver of the right to file ineffective assistance of counsel claims in PCRA proceedings was not knowing and voluntary. See (Doc. 36 at 4-25); Commonwealth

v. Buterbaugh, No. 1152 MDA 2017, 2018 WL 4907594, at *1 (Pa. Super. Ct. Oct. 10, 2018). The Court of Common Pleas appointed counsel to represent Buterbaugh in the PCRA proceedings on February 9, 2016. (Doc. 36 at 31). The court held an evidentiary hearing on the petition on March 30, 2017. (Id. at 32). The court then denied the PCRA petition on June 22, 2017, finding that: (1) Buterbaugh waived his claims of ineffective assistance of trial counsel because he waived the right to assert ineffective assistance of counsel claims in PCRA proceedings; and (2) his claim of ineffective assistance of appellate counsel failed on its merits. See (Id.); Buterbaugh, No. 1152 MDA 2017, 2018 WL 4907594, at *3. The Superior Court affirmed on October 10, 2018. Commonwealth v. Buterbaugh, No. 1152 MDA 2017, 2018 WL 4907594, at *5 (Pa. Super. Ct. Oct. 10, 2018). Buterbaugh filed a petition for allowance of appeal to the Pennsylvania Supreme Court. The court denied the petition on March 11, 2020. Commonwealth v. Buterbaugh, 226 A.3d 1222 (Pa. 2020).

While the first PCRA petition was still pending on appeal, Buterbaugh filed a second PCRA petition on August 15, 2018. See (Doc. 36 at 54); Commonwealth v. Buterbaugh, 270 A.3d 1170, No. 245 MDA 2021, 2021 WL 6140890, at *1 (Pa. Super. Ct. Dec. 30, 2021). The Court of Common Pleas dismissed the second PCRA petition on September 17, 2018. Id.

Buterbaugh filed the habeas corpus petition that initiated the present case on March 13, 2020, and the court received and docketed the petition on April 1, 2020.[2] (Doc. 1). The case was initially assigned to United States District Judge Malachy E. Mannion. Several months later, on September 30, 2020, Buterbaugh filed a third PCRA petition. Buterbaugh, 2021 WL 6140890, at *1. Based on the filing of the third PCRA petition, Judge Mannion issued a memorandum and order on November 15, 2021, staying disposition of the petition pending Buterbaugh's attempts to exhaust state court remedies with respect to claims that he had raised in state court in the third PCRA petition. (Docs. 12-13).

The Court of Common Pleas dismissed the third PCRA petition as untimely on January 22, 2021. Buterbaugh, 2021 WL 6140890, at *1. The Superior Court affirmed this ruling on December 30, 2021. Id. at *4. Buterbaugh filed a petition for

---

[2] The petition is timely under 28 U.S.C. § 2244's one-year statute of limitations. The limitations period began to run on the date on "which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), which in this case was February 24, 2015, the last date on which Buterbaugh could have filed a petition for writ of certiorari to the United States Supreme Court. See Buterbaugh, 104 A.3d at 1; U.S. S. Ct. R. 13(1). The limitations period ran for 349 days until February 8, 2016, when the filing of Buterbaugh'st first PCRA petition statutorily tolled the limitations period. See Buterbaugh, 2018 WL 4907594, at *1; 28 U.S.C. § 2244(d)(2). The limitations period remained tolled until March 11, 2020, when the Pennsylvania Supreme Court issued its final decision on the first PCRA petition. See Buterbaugh, 226 A.3d at 1222. At that point, sixteen days remained in the limitations period due to the 349 days that had already elapsed. Under the prisoner mailbox rule, Buterbaugh is deemed to have filed his petition on March 13, 2020, the date he submitted the petition for mailing by prison officials. See (Doc. 1 at 23); Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011). Because this was only two days after the Pennsylvania Supreme Court's decision, fourteen days remained in the limitations period and the petition is timely.

allowance of appeal to the Pennsylvania Supreme Court, which was denied on July 26, 2022. Commonwealth v. Buterbaugh, 282 A.3d 1123 (Pa. 2022).

On August 31, 2022, Judge Mannion issued an order lifting the stay and reopening this case. (Doc. 18). On February 7, 2023, the court issued another order in which it noted that respondents' response to the petition had only addressed the issue of exhaustion of state court remedies. (Doc. 27). The court accordingly directed respondents to file another response that addressed the merits of the petition. (Id.) After being granted several extensions of time, respondents filed a response to the petition on May 1, 2023. (Doc. 35). Buterbaugh filed a reply brief on July 18, 2023. (Doc. 40).

On October 11, 2024, Judge Mannion issued an order pursuant to Rule 7 of the rules governing Section 2254 habeas corpus cases requiring respondents to produce a complete record of state court proceedings. (Doc. 42). Respondents provided the supplemental documents on December 2, 2024, and December 3, 2024. (Docs. 46-49). The case was then reassigned to the undersigned pursuant to the

9

verbal order from Chief United States District Judge Matthew W. Brann on January

21, 2025.[3]

**II.    Standard of Review**

A United States District Court "shall entertain an application for a writ of

habeas corpus in behalf of a person in custody pursuant to the judgment of a State

court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States." 28 U.S.C. §2254(a).

**III.    Discussion**

Buterbaugh's habeas corpus petition asserts twelve claims for habeas corpus

relief: (1) that trial counsel was ineffective for failing to introduce evidence of

Henry's violent character; (2) that the trial court erred in failing to instruct the jury

on causation and that counsel was ineffective for failing to object to this; (3) that the

trial court gave a prejudicial jury instruction on malice and that counsel was

ineffective for failing to object to this; (4) that the trial court gave an incomplete,

misleading, and prejudicial instruction on manslaughter and that counsel was

ineffective for failing to object to this; (5) that counsel was ineffective for failing to

---

[3] Buterbaugh's petition names as respondents both the superintendent of the prison in which he is incarcerated and the Attorney General of Pennsylvania. (Doc. 1). The undersigned notes that prior to her appointment to this court, she was employed by the Attorney General's office. The proper respondent in a habeas corpus action, however, is the warden or superintendent of the facility where the petitioner is being held. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Thus, because the Attorney General is not a proper respondent to this case and no attorneys from the Attorney General's office have entered an appearance in the case, the Attorney General will be dismissed from this case and the court finds that the naming of the Attorney General as a respondent does not require the undersigned to recuse herself from the case pursuant to 28 U.S.C. § 455.

object to improper question of Souders and that the trial court erred by failing to allow Buterbaugh to present witnesses to impeach Souders's testimony; (6) that the trial court erred by applying a deadly weapons sentencing enhancement; (7) that counsel was ineffective for failing to object to the admission of Buterbaugh's criminal record; (8) that the trial court imposed a manifestly excessive sentence; (9) that trial counsel was ineffective for failing to investigate witnesses or present exculpatory evidence; (10) that appellate counsel was ineffective for failing to assert additional ineffective assistance of counsel arguments; (11) that Buterbaugh's waiver of his right to present ineffective assistance of counsel claims during PCRA proceedings was not knowing or voluntary and that appellate counsel was ineffective for allowing him to waive the right; and (12) that the trial court abused its discretion by allowing his ineffective assistance of counsel claims to be asserted on direct appeal rather than during PCRA proceedings. (Id.)

Respondents argue that Buterbaugh's claims should be denied on their merits and that, alternatively, his claims of ineffective assistance of counsel that were raised during PCRA proceedings should be denied as procedurally defaulted. (Doc. 35). This procedural default argument will be analyzed first before the other arguments are considered.

### A. Procedural Default

Respondents contend that Buterbaugh's claims of ineffective assistance of trial counsel raised in PCRA proceedings are procedurally defaulted. Before seeking habeas corpus relief in federal court, a state prisoner must exhaust his remedies in state court. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S.

11

838, 842 (1999). To do so, the petitioner must "give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of

the State's established appellate review process." Id. at 842. In Pennsylvania, a

petitioner is only required to present his claim to the Pennsylvania Superior Court

to exhaust state court remedies and is not required to appeal to the Pennsylvania

Supreme Court. Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Habeas corpus claims in federal court must be denied as procedurally

defaulted when either (a) the claims have not been exhausted and no additional

state remedies are available under state procedural rules or (b) the claims were

presented in state court but were not addressed on their merits because an

independent and adequate state procedural rule barred review on the merits. Rolan

v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012). Federal courts may not consider

procedurally defaulted claims unless the petitioner "can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In this case, Buterbaugh's petition asserts one claim of ineffective assistance

of trial counsel that he attempted to raise in PCRA proceedings: that trial counsel

was ineffective for failing to investigate witnesses or present exculpatory evidence

(Ground 9). (Doc. 1 at 16). The state courts of Pennsylvania determined that

Buterbaugh waived this claim because he knowingly and voluntarily waived the

right to raise ineffective assistance of counsel claims during PCRA proceedings in

favor of raising such claims on direct appeal. Buterbaugh, 2018 WL 4907594, at *2-4.

This is an independent and adequate state procedural rule that forecloses analysis on the merits. The claim will accordingly be denied as procedurally defaulted.

### B.    State Law Claims

Buterbaugh's petition advances two claims that allege only violations of state law: first that the trial court erred by applying a deadly weapons enhancement to his sentence (Ground 6), and second that the state courts of Pennsylvania abused their discretion by allowing him to assert ineffective assistance of counsel claims on direct appeal (Ground 12). (Doc. 1 at 13, 19). These claims will be denied because they are not cognizable claims. Federal habeas corpus relief is not available for a violation of state law. Jones v. Hendrix, 599 U.S. 465, 490 (2023) (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

### C.    Excessive Sentence Claim

Buterbaugh additionally argues the trial court imposed a manifestly excessive sentence (Ground 8). (Doc. 1 at 15). This claim is appropriately construed as arguing that his sentence violates the Eighth Amendment. Such an argument, however, is meritless. Buterbaugh concedes in his petition that his minimum sentence is within the parameters established by statute for a sentence for third-degree murder, (see id.), and "a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." United States v. Gonzalez, 905 F.3d 165, 208 (3d Cir. 2018) (quoting United States v. Miknevich, 638 F.3d 178, 186 (3d Cir. 2011)). To the extent Buterbaugh is alternatively arguing that the trial court violated Pennsylvania sentencing laws, his

claim is not cognizable. See Jones, 599 U.S. at 490 (noting that federal habeas corpus relief is not available for violations of state law).

### D.    Ineffective Assistance of Counsel Claims

Buterbaugh has advanced seven claims of court error and related ineffective assistance of counsel that he exhausted in state court (Grounds 1-5, 7, and 10). These claims were decided on their merits in state court and are accordingly governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet." Mays v. Hines, 592 U.S. 385, 391 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions,"

Dunn v. Reeves, 594 U.S. 731, 733 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement." Mays, 592 U.S. at 391 (quoting Harrington, 562 U.S. at 102). When a claim has been decided on its merits in state court, habeas review is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

To obtain habeas corpus relief based on ineffective assistance of counsel, petitioners must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance caused prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). Analysis of whether counsel's performance was deficient must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate. Dunn, 594 U.S. at 739. A high level of deference must be given to both counsel's actions and the state court's determination that counsel's actions were constitutionally adequate. Id.; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003)). Federal habeas relief may only be granted if "*every* 'fairminded jurist' would agree that *every* reasonable lawyer would have made a different decision." Dunn, 594 U.S. at 740 (emphasis in original) (quoting Harrington, 562 U.S. at 101).

Buterbaugh's claims of ineffective assistance of counsel and related court errors will be considered *seriatim*.

### 1. Character Evidence

Buterbaugh first argues that counsel was ineffective for failing to introduce evidence of Henry's violent and aggressive character in the form of his criminal record and specific instances of conduct. (Doc. 1 at 6). The Superior Court denied this claim on its merits, noting that evidence of a victim's violent and aggressive conduct is only admissible when the defendant asserts that he acted in self-defense. Buterbaugh, 91 A.3d at 1255-56. Because Buterbaugh's defense at trial was "homicide by misadventure"—in other words, that he killed Henry accidentally—rather than self-defense, any evidence of Henry's violent and aggressive character would have been irrelevant and inadmissible. Id. Thus, the court concluded that counsel's failure to introduce evidence of Henry's violent and aggressive conduct did not constitute ineffective assistance because such evidence would have been irrelevant. Id. The Superior Court's conclusion is neither contrary to federal law nor an unreasonable application of federal law to the facts of this case. Counsel cannot be considered ineffective for failing to assert a meritless argument. Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).[4]

---

[4] Buterbaugh argues in his reply brief that counsel was ineffective for failing to advance a theory of self-defense. (Doc. 40 at 7). This claim, however, was not exhausted in state court and is procedurally defaulted. Moreover, because Buterbaugh did not advance the argument in his initial petition and instead raised it for the first time in his reply brief on July 18, 2023, it is untimely.

### 2. Causation

Buterbaugh next argues the trial court erred by failing to instruct the jury on causation and that counsel was ineffective for failing to object to this failure. (Doc. 1 at 7). The Superior Court concluded that this claim failed on its merits because causation was not at issue in the case. Buterbaugh, 91 A.3d at 1257. The court noted that the evidence adduced at trial clearly showed that Henry's death was caused by Buterbaugh striking him with his truck and that no contrary evidence was introduced to show that the death could be attributed to other causes. Id. at 1257-59.

This conclusion is reasonable and not contrary to clearly established federal law. The state court record makes abundantly clear that Buterbaugh striking Henry with his truck was the cause of Henry's death—no contrary evidence of another cause was offered in state court, nor has Buterbaugh offered a contrary theory of causation during federal habeas proceedings. Any objection by counsel seeking a jury instruction on causation would have been meritless and counsel cannot be considered ineffective for failing to raise such an objection.

### 3. Malice Jury Instruction

Buterbaugh's third argument is that the trial court gave an improper closing instruction on the element of malice by emphasizing specific examples of what Buterbaugh did that could form the basis for a finding of malice and that counsel was ineffective for failing to object to this instruction. (Doc. 1 at 9). Although Buterbaugh has not specifically stated a federal law basis for his challenge to the jury instruction, the court liberally construes the claim as arguing that the instruction violated Buterbaugh's due process rights. Analysis of whether jury

instructions violate due process must begin with the "specific language" challenged and then consider the language "'in the context of the charge as a whole' to determine whether there is a reasonable likelihood the jury applied the instructions in a manner violative of the accused's due process rights." Tyson v. Superintendent Houtzdale SCI, 976 F.3d 382, 392 (3d Cir. 2020) (quoting Smith v. Horn, 120 F.3d 400, 411 (3d Cir. 1997)). A jury instruction violates due process if it "directly foreclos[es] independent jury consideration of whether the facts proved established certain elements of the offense with which the defendant was charged." United States v. Repak, 852 F.3d 230, 255 (3d Cir. 2017) (quoting Carella v. California, 491 U.S. 263, 265 (1989)). If "the charge as a whole fairly and adequately submits the issues in the case to the jury," there is no due process violation. Id. (quoting United States v. Thayer, 201 F.3d 214, 221 (3d Cir. 1999)).

The Superior Court quoted the relevant portion of the trial court's instruction as follows:[5]

> When deciding whether [Appellant] acted with malice, you should consider all the evidence regarding his words, conduct, and the attending circumstances that may show his state of mind including *evidence that he was thinking "ki[ss] my ass" when he hit Dale Steven Henry with his truck, evidence that immediately after he hit Dale Steven Henry with his truck he said he wanted to go back and fly through them, and I'd like to go back and take out the rest of the guys who were there.*
> *The evidence that he attempted to conceal the crime by removing the hood of his truck with a dent in it where Dale Steven Henry was hit by the truck. The evidence that [Appellant] could have avoided hitting Dale Steven Henry with his truck. And the evidence that he used a deadly weapon, in this case a 1986 Ford F–150 pickup truck, by hitting Dale*

---

[5] In accordance with the Superior Court's style convention, the portions of the jury instruction that differ from, or are added to, the model jury instruction are emphasized.

> *Steven Henry with said truck on vital parts of Dale Steven Henry, specifically his torso and his head.* If you believe that [Appellant] intentionally used a deadly weapon on a vital part of [the victim's] body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the [Appellant] acted with malice.

Buterbaugh, 91 A.3d at 1260 (bracketing in original).

The Superior Court found the jury instruction proper. The court noted that the instruction informed the jury of the correct legal principle and referred to facts that were properly in evidence. Id. The court also noted that after giving this instruction, the trial court reiterated that it was not the finder of fact and that the jury was solely responsible for finding the facts. Id. The court thus found that the jury instruction on malice did not prejudice Buterbaugh and that his claim of ineffective assistance of counsel therefore failed. Id.

The Superior Court's conclusion is reasonable and not contrary to clearly established federal law. The jury instruction at issue did not "directly foreclose" the jury's consideration of whether the Commonwealth had proven that Buterbaugh acted with malice, it simply provided specific examples—which were supported by the record—of evidence the jury could consider in conducting its analysis. Buterbaugh, 91 A.3d at 1260. Considered as a whole, the instruction fairly and adequately submitted the issue of malice to the jury. Hence, the Superior Court's conclusion that the jury instruction was proper is reasonable and not contrary to clearly established federal law, and trial counsel in turn cannot be considered ineffective for failing to object to the instruction.

### 4. Manslaughter Jury Instruction

Buterbaugh also challenges the trial court's failure to give a complete jury instruction on voluntary manslaughter. (Doc. 1 at 10). Buterbaugh argues that the court failed to instruct the jury on what circumstances could reduce his conviction from murder to manslaughter. (Id.) Like the previous argument, the court liberally construes this as asserting a due process violation.

The Superior Court considered Buterbaugh's manslaughter jury instruction argument and denied it on its merits. See Buterbaugh, 91 A.3d 1247 at 1261. The court first noted that the model Pennsylvania jury instructions state that murder can be reduced to voluntary manslaughter if either of two reducing circumstances are present: (1) the defendant kills the victim in a heat of passion following a serious provocation; or (2) the defendant kills the victim based on an unreasonable mistaken belief that killing the victim is justified. Id. The trial court in this case did not instruct on what circumstances could reduce murder to manslaughter, and instead simply instructed, "[i]f you do not find the defendant had malice and committed a murder, you may find him guilty of voluntary manslaughter as long as you're satisfied that the following three elements have been proven beyond a reasonable doubt: First, that Dale Steven Henry is dead. Second, that the defendant killed him. Third, that the defendant had the intent to kill." Id.

Considering the record as a whole, the Superior Court concluded that there was a lack of evidence to support a voluntary manslaughter jury instruction. Id. "Even assuming Henry did approach the truck in a threatening manner and/or threw an object at the truck," the court explained, "this would not justify

20

Appellant's subsequent use of deadly force since this display was excessive under the circumstances." Id.

The superior court's conclusion is reasonable and is not contrary to clearly established federal law. There appears to be no basis in the state court record to conclude that Buterbaugh killed Henry in the heat of passion or that he was operating under the mistaken impression that killing Henry was justified. Hence, the superior court's conclusion that the record did not justify a voluntary manslaughter instruction is reasonable and counsel was not ineffective for failing to object to the incomplete jury instruction.

### 5. Claims Related to Souders's Testimony

Buterbaugh next argues that the trial court erred by allowing Nathan Souders to provide opinion testimony, that trial counsel was ineffective for failing to object to this error, and that the court erred by not allowing testimony from two witnesses, Keri Clarke and Rodney Waters, that would impeach Souders's credibility. (Doc. 1 at 12).

Buterbaugh's opinion testimony argument is based on testimony from Souders that he thought Buterbaugh could have avoided hitting Henry, that he thought Buterbaugh was angry at the time of the collision, and that he thought Buterbaugh hit Henry intentionally. (Id.) Buterbaugh argues that this constitutes improper expert opinion testimony offered by a lay witness. (Id.)

This argument does not present a cognizable claim for federal habeas corpus relief. "[E]videntiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error

deprives a defendant of fundamental fairness in his criminal trial." Bisaccia v. Att'y Gen. of State of N.J., 623 F.3d 307, 312 (3d Cir. 1980). Allowing a lay witness to provide opinion testimony on issues on which the witness clearly had firsthand knowledge simply does not amount to a serious enough issue to deprive Buterbaugh of a fair trial.

As for the related ineffective assistance of counsel claim, the Superior Court denied this claim on its merits because Souders's opinion testimony was admissible lay opinion testimony under Pennsylvania Rule of Evidence 701, and counsel therefore would not have been successful if he had objected to the testimony. Buterbaugh, 91 A.3d at 1262. Buterbaugh's federal habeas claim fails for the same reason. Failure to assert a meritless argument does not constitute ineffectiveness. Parrish, 150 F.3d at 328.

Buterbaugh's arguments that the trial court erred by not allowing the testimony of Keri Clarke and Rodney Waters to impeach Souders are procedurally defaulted. The Superior Court deemed these arguments waived because Buterbaugh failed to develop the arguments and failed to argue why Clarke's testimony would not constitute hearsay. Buterbaugh, 91 A.3d at 1262. This is an independent and adequate state procedural ruling that bars federal habeas review of these claims, and Buterbaugh has not offered any basis to excuse the procedural default. See Rolan, 680 F.3d at 317; Coleman, 501 U.S. at 750. Furthermore, even if the claims were not procedurally defaulted, the trial court's evidentiary ruling would not be a cognizable basis for federal habeas corpus relief. Bisaccia, 623 F.3d at 312.

### 6. Buterbaugh's Past Convictions

Buterbaugh argues that the trial court erred by admitting his past convictions for disorderly conduct, unauthorized use of a motor vehicle, summary harassment, and two instances of driving under the influence, and that trial counsel was ineffective for failing to object to the admission. (Doc. 1 at 14). This evidence was admitted through a non-character witness, police officer Jason Cachara, to rebut evidence that Buterbaugh offered throughout the trial that "he has a good reputation in the community and that he was a peaceful, law-abiding person." Buterbaugh, 91 A.3d at 1263.

The Superior Court considered these claims on their merits and denied them. The court first noted that although Buterbaugh's good character evidence opened the door to evidence of his past convictions as rebuttal evidence, the commonwealth could not properly introduce such evidence through the testimony of a third-party non-character witness and instead should have introduced the evidence through cross-examination of Buterbaugh or his character witnesses. Id. The court accordingly found that there was arguable merit to the claim that counsel was ineffective for failing to object to the evidence being admitted through Cachara's testimony. Id.

Nevertheless, the court denied the ineffective assistance of counsel claims because counsel had a reasonable strategic basis for his actions. Id. The court noted testimony from trial counsel that he knew good character evidence would open the door to admission of Buterbaugh's past convictions, but that he made the strategic decision to present the good character evidence because he thought the benefit of

23

the evidence outweighed the harm caused by admission of the past convictions. Id.
at 163-64. The court further noted that even though the evidence of past convictions
was admitted through an objectionable means—Cachara's testimony—the evidence
would have been admissible through another means by cross examining
Buterbaugh or his character witnesses. Id. The court accordingly denied the
ineffective assistance claim because Buterbaugh failed to establish both ineffective
assistance and prejudice. Id.

The Superior Court's decision is squarely in line with the clearly established
law of Strickland and its progeny and is a reasonable application of that law.
Furthermore, this court owes heavy deference both to counsel's actions and the
Superior Court's conclusion that the actions were reasonable and may only grant
habeas corpus relief if "*every* fairminded jurist would agree that *every* reasonable
lawyer would have made a different decision." Dunn, 594 U.S. at 740 (internal
quotation marks omitted). Buterbaugh's claim falls well short of satisfying this
highly deferential standard and will be denied.

Buterbaugh's related claim challenging the trial court's admission of his past
convictions is not cognizable because it cannot be said that the trial court's
evidentiary ruling deprived him of a fair trial. Bisaccia, 623 F.3d at 312.

### 7. Appellate Counsel

Buterbaugh's final ineffective assistance of counsel claim asserts that his
direct appeal counsel was ineffective for failing to raise additional claims of
ineffective assistance of trial counsel on direct appeal. (Doc. 1 at 17). The Superior
Court considered this claim on its merits and denied it, noting that appellate

counsel testified during PCRA proceedings that he raised on appeal all the

ineffective assistance of counsel claims that he thought had merit and did not raise

the additional claims Buterbaugh wished to present because he did not think they

had reasonable merit. <u>Buterbaugh</u>, 2018 WL 4907594, at *3. This conclusion is a

reasonable application of <u>Strickland</u> and its progeny. As the Supreme Court has

noted, [e]ffective appellate counsel should not raise every nonfrivolous argument on

appeal, but rather only those arguments most likely to succeed." <u>Davila v. Davis</u>,

582 U.S. 521, 533 (2017). This court will accordingly defer to counsel's strategic

decision to only present the claims he believed had merit and the Superior Court's

conclusion that counsel's actions were reasonable and deny habeas corpus relief.

### E.    Waiver of Ineffective Assistance Claims During PCRA Proceedings

Finally, Buterbaugh asserts that the waiver of his right to assert ineffective

assistance of counsel claims during PCRA proceedings was not knowing, voluntary,

and intelligent (Ground 11). (Doc. 1 at 18). This claim is not cognizable because it

only asserts a wrong that occurred during collateral state proceedings. "[T]he

federal role in reviewing an application for habeas corpus is limited to evaluating

what occurred in the state or federal proceedings that actually led to the petitioner's

conviction; what occurred in the petitioner's *collateral* proceeding does not enter

into the habeas calculation." <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir. 1998)

(emphasis in original).

Moreover, even if this claim were cognizable, it would be meritless. The

Superior Court concluded that Buterbaugh's waiver of his right to assert ineffective

assistance claims during PCRA proceedings was knowing and voluntary because

the trial court conducted an extensive colloquy with Buterbaugh, during which the court warned Buterbaugh that the waiver meant he would not be able to bring any additional ineffective assistance of counsel claims during PCRA proceedings and Buterbaugh stated that he understood this and had been given an opportunity to discuss this with his counsel prior to the colloquy. Buterbaugh, 2018 WL 4907594, at *1-4. This court must defer to this factual finding made by the state courts. See 28 U.S.C. § 2254(e)(1).

IV.    **Conclusion**

For the foregoing reasons, the petition for writ of habeas corpus is denied. A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further. Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    February 21, 2025

26